IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALFREDO SARARO and MEGHAN SARARO,<br><br>Plaintiffs,<br><br>vs.<br><br>PAWS UP RANCH, LLC, d/b/a Resort at Paws Up,<br><br>Defendant. | CV 24-72-M-TJC<br><br>**ORDER** |

Presently before the Court is Plaintiffs Alfredo Sararo and Meghan Sararo's ("Plaintiffs") Motion for Sanctions. (Doc. 64.) Plaintiffs allege Defendant Paws Up Ranch, LLC ("Paws Up") intentionally destroyed evidence that was highly relevant to this case, and therefore, request the Court enter default judgment on their punitive damages claim as a sanction for the spoliation. The motion is fully briefed and ripe for the Court's review. Having considered the parties' submissions and arguments, the Court finds the motion should be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

In September 2023, Plaintiff were guests at Paws Up, a luxury ranch resort on 37,000 acres in Missoula County, Montana. (Doc. 55 at ¶ 9.) During their stay, Plaintiffs participated in a guided archery tour, which apparently involved shooting

a bow from various platforms built on the property. Plaintiffs were injured when a platform they were standing on collapsed during the tour. (*Id.* at ¶¶ 11-24.)

On October 24, 2023, prior counsel for Plaintiffs sent Paws Up a Demand for Preservation of Documents, Electronically Stored Information, and Tangible Evidence. (Doc. 65-5.) The preservation of evidence letter demanded that Paws Up "preserve and not alter any and all . . . materials, tangible things . . . related to, associated with, or connected to the Guided Archery Tour." (*Id.*) Paws Up has acknowledged receiving the letter. (Doc. 65-1 at 28.)

Prior to receiving the preservation letter, however, the failed structural components of the platform had been removed and replaced with new materials. Paws Up asserts that within approximately two weeks of the incident, it hired Miguel Chavez and Lone Tree Construction, LLC to repair and rebuild the platform. (Doc. 66-1 at ¶ 3; Doc. 66-5 at ¶10.) Mr. Chavez avers that before the repairs were made, "the scene of the collapsed stand was documented with contemporary photographs." (Doc. 66-1 at ¶ 4.) He further states that he "rebuilt the stand" by "removing and replacing the compromised structural members of the stand." (*Id.* at ¶¶ 5-6.)[1]

[1] Plaintiffs' motion does not appear to be based on any claim that this "rebuilding" of the platform constituted spoliation. Rather, the motion is based solely on Paws Up's later removal of the platform.

On November 14, 2023, prior counsel for Plaintiffs sent Paws Up a demand for payment. (Doc. 35-1.) In the demand, counsel noted that photographs of the collapsed platform "clearly demonstrate disintegration of the wood" and stated Plaintiffs "intend to seek discovery on these issues if litigation is commenced." *Id.* at 5-6.

On May 23, 2024, Plaintiffs initiated this action, and the case was initially assigned to Magistrate Judge DeSoto. (Doc. 1.) On August 27, 2024, a Scheduling Order was issued, which set the initial discovery deadline for February 14, 2025. (Doc. 13.)

On February 12, 2025, Paws Up filed a motion for an informal discovery conference, which was held before Judge DeSoto on February 25, 2025. (Doc. 18, 23.) At the informal discovery conference, Plaintiffs' prior counsel indicated additional supplemental documents would be produced. (Doc. 36-6 at ¶ 20.) But one week later, on March 3, 2025, Plaintiffs' prior counsel withdrew, and Plaintiffs' current counsel appeared. (Doc. 24.)

On March 10, 2025, Plaintiffs' current counsel asked Paws Up for a site visit via email. (Doc. 65-6 at 1-2.) Plaintiffs state Paws Up was initially receptive to the idea of a site visit, but ultimately declined to allow Plaintiffs' counsel to view the platform in person. (Doc. 33-2 at ¶ 11.) Paws Up also reportedly declined to

advise whether the platform was in the same condition as it was the day it collapsed. (*Id.*)

On March 20, 2025, over a month after discovery closed, Plaintiffs' counsel filed a motion to reopen discovery. (Doc. 32.) In the motion, Plaintiffs acknowledged that their prior counsel had done little to prosecute the case. He had not propounded any discovery requests, taken any depositions, retained any experts, or requested a site visit to assess the platform. (Doc. 33 at 5.) Therefore, current counsel indicated they set out to "course-correct the litigation." (*Id.* at 6.) Counsel indicated Plaintiffs had served supplemental discovery responses, agreed to post-discovery deadline depositions of Plaintiffs, and agreed to extend the motions deadline. (*Id.* at 6-9.) Plaintiffs' counsel requested the Court reopen discovery for a period of 45 days, and asked the Court to allow Plaintiffs to "engage in a site visit to view the Paws Up platforms in person." (*Id.* at 18.) Plaintiffs indicated the platforms were "critical evidence." (*Id.* at 15.)

On March 24, 2025, Paws Up filed a motion to dismiss pursuant to Rule 37(c)(1). (Doc. 34.) Paws Up sought dismissal based upon Plaintiffs' alleged discovery violations and bad faith.

While these motions were pending, the case was reassigned to the undersigned on April 21, 2025. (Doc. 43.) On May 2, 2025, the Court vacated the final pretrial conference and trial. (Doc. 46.) The Court noted that a settlement

conference was scheduled to occur before Magistrate Judge Johnston on June 17, 2025. The Court indicated that the trial and related deadlines would be rescheduled if the case was not resolved at the settlement conference. (*Id.*)

In the meantime, and while Plaintiffs' motion to reopen discovery was still pending, Paws Up removed the platform on May 27, 2025. (Doc. 65-2 at 1.) The platform was removed after an attorney at defense counsel's law firm sent an email to Paws Up's Director of Facilities, indicating it was "ok to remove the second stand." (Doc. 66-7 at ¶¶15-16.) Paws Up contends it misunderstood the directive as to which platform was to be removed, and it removed both the specific platform involved in the incident and another platform. (Doc. 66-7 at ¶ 17; Doc. 66-8 at ¶¶ 5-11.)

The settlement conference was held on June 17, 2025, but the case did not settle. (Doc. 47.) Thereafter, on August 25, 2025, the Court issued an order denying Paws Up's motion to dismiss (Doc. 49), and set a hearing on Plaintiff's motion to reopen discovery. (Doc. 48.) The Court also directed the parties to further meet and confer on the discovery-related issues and file a status report. (*Id.*)

During this time period, on September 5, 2025, Paws Up's counsel disclosed to Plaintiffs' counsel that the platform had been taken down. (Doc. 66-7 at ¶ 10.)

On September 15, 2025, the parties filed their status report and jointly requested to fully reopen discovery. (Doc. 50.) No mention was made of Plaintiffs' request for a site visit or that the platform had been disassembled. Pursuant to the parties' stipulation, the Court issued an Amended Scheduling Order, with a new discovery deadline of April 27, 2026. (Doc. 51.)

On October 3, 2025, Plaintiffs filed an Amended Complaint, which added a claim for punitive damages. (Doc. 55 at ¶ 40.) It appears that Plaintiffs subsequently received discovery responses on or about November 5, 2025, wherein Paws Up confirmed that the platforms were removed on May 27, 2025. (Doc. 65-2.)

On January 23, 2026, the Court again extended the discovery deadline upon request of the parties to December 4, 2026. (Doc. 62.) The parties represented that Plaintiff Alfredo Sarano, was scheduled for surgery, and additional time was necessary to allow him to reach medical stability.

Plaintiffs conducted a Rule 30(b)(6) deposition on or about January 28, 2026, and questioned Paws Up about the removal of the platforms. (Doc. 65-1 at 27-36.) Then, on February 17, 2026, over five months after learning that the platform had been removed, Plaintiffs filed the instant motion for sanctions based on spoliation of evidence. (Doc. 64.)

/ / /

## II. DISCUSSION

### A. Timeliness

Spoliation motions "should be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Montoya v. Orange Cty. Sheriff's Dep't.*, 2013 WL 6705992, *6 (C.D. Cal. Dec. 18, 2013) (citing *Goodman v. Praxair Services, Inc.*, 632 F.Supp.2d 494, 506-08 (D. Md. 2009). Federal courts have held that an unreasonable delay may render a spoliation motion untimely, and have denied motions on that basis. *See Cottle-Banks v. Cox Commc'ns Inc.*, 2013 WL 2244333, *16 (S.D. Cal. May 21, 2013) (collecting cases).

Here, Plaintiffs were advised that the platforms had been removed on September 5, 2025. (Doc. 66-7 at ¶ 10.) Plaintiffs did not, however, file their spoliation motion until February 17, 2026, over five months later. This extended delay could well be deemed unreasonable. Nevertheless, the Court will address the merits of the motion "in order to ensure that discovery in this action did not 'interfere with the rightful decision of this case." *Montoya*, 2013 WL 6705992 at *7. Plaintiffs' delay in filing its motion will, however, be relevant in determining any appropriate sanction to impose on Paws Up. *Id.*

### B. Spoliation

Spoliation "is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future

litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citation omitted). Federal trial courts may impose sanctions under their "inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993). Sanctions can range in severity, and include "instruct[ing] the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence"; "exclud[ing] witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence"; or "dismiss[ing] the claim of the party responsible for destroying the evidence." *In re Napster Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006).

"[C]ourts generally look for three elements to determine if sanctionable spoliation has occurred: (1) a duty to preserve the evidence at the time of destruction; (2) culpability for the destruction; and (3) relevance of the destroyed evidence to a claim or defense 'such that a reasonable trier of fact could find that it would support that claim or defense.'" *Webster v. Psychiatric Med. Care, LLC*, 386 F.Supp.3d 1358, 1362 (D. Mont. 2019) (citing *Rockman Co. (USA) v. Nong Shim Co.*, 229 F.Supp.3d 1109, 1122-23 (N.D. Cal. 2017).

If spoliation is found, the court must then determine what sanction is appropriate. *Sanders v. Univ. of Idaho, College of Law*, 634 F.Supp.3d 936, 943 (D. Idaho 2022). Courts must determine the appropriate sanction "on a case-by-

case basis," and the sanction "should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence and the degree of prejudice suffered by the movant." *Giacometto Ranch Inc. v. Denbury Onshore LLC*, 2024 WL 218625, *2 (D. Mont. Jan. 4, 2024) (quoting *Sanders*, 634 F.Supp.3d at 944). The Court should select "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Id.* (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012).

**a. Obligation to Preserve Evidence**

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster Inc.*, 462 F.Supp.2d at 1067. It is well settled that this duty "may arise even before litigation is formally commenced." *Webster*, 386 F.Supp.3d at 1363. Accordingly, parties "have an obligation to preserve evidence from the moment that litigation is reasonably anticipated." *Montoya v. Orange Cty. Sheriff's Dep't*, 2013 WL 6705992, *7 (C.D. Cal. Dec. 18 2013).

Here, the Court finds Paw Up's duty to retain evidence arose no later than October 24, 2023, when Plaintiff's prior counsel sent Paws Up the preservation of evidence letter. And arguably, Paws Up's obligation to retain the platforms was triggered immediately after the collapse, because Plaintiffs were visibly injured

and taken by ambulance to the hospital. *See e.g. Roberts v. Smith's Food & Drug Centers, Inc.*, 2014 WL 2123213, *5 (D. Nev. May 21, 2014) (finding the fact that plaintiff was transported out of defendant's store on a gurney with the assistance of emergency medical personnel was sufficient to trigger the defendant's duty to preserve relevant evidence). Thus, Paws Up had an obligation to retain the platform.

**b. Culpability**

A "culpable state of mind" under the spoliation test includes negligence. *Cottle-Banks v. Cox Comms., Inc.*, 2013 WL 2244333, *14 (S.D. Cal. May 21, 2013) (citing *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D. Cal. 2009). A finding of "bad faith" is not required. *Id.*; *Sanders*, 634 F.Supp.3d at 941. Rather, sanctions for spoliation may be imposed if the party has some notice of the potential relevance of the evidence to litigation. *Id.*

While there is insufficient evidence presently before the Court to find bad faith, Paws Up was certainly negligent in removing the platform. Paws Up contends the platform was only taken down after the initial discovery period had closed. While that is true, Paws Up glosses over the fact that at the time of removal, Plaintiffs' motion to reopen discovery was pending before the Court. Further, the motion specifically requested the Court allow a site inspection so that Plaintiffs could inspect the platform. In light of that procedural posture, Paws Up

was on notice of the potential relevance of the platform to this litigation, and should have maintained the platform at least until the Court ruled on Plaintiffs' motion. Thus, Paws Up was culpable for the destruction of the platform.

**c. Relevance of the Destroyed Evidence**

The relevance of the existing platform structure had diminished because of the delay in requesting a site visit. In fact, at the outset of Plaintiffs' brief in support of their motion, Plaintiffs highlight that "untreated wood left out in the elements quickly degrades," and they quote from Defendant's discovery responses that "[d]ue to the harsh environmental conditions of Missoula County – including significant snow loads, freeze/thaw cycles, and moisture exposure" the wood on the platform would naturally degrade and rot. (Doc. 65 at 6.) This degradation was obviously ongoing during the 18-month delay between the accident and Plaintiffs' first request for a site visit, which included two Montana winters. Thus, when the inspection was ultimately requested, the condition of the platform would not have been the same as its condition at the time of the accident.

Nevertheless, even in a degraded condition, inspection of the Platform would likely yield relevant evidence. For example, evidence of the platform's design, construction, height, and possibly the source of the failure could have been gleaned from physical inspection of the platform. A reasonable trier of fact could find this type of information supports Plaintiffs' claims. Paws Up acknowledged

as much in conceding at deposition that it was "foreseeable to Paws Up that the platforms themselves could be relevant to potential litigation." (Doc. 65-1 at 23.)

Paws Up now argues, however, that the destroyed platform is not relevant because shortly after the incident it had been "entirely rebuilt with new materials, and any inspection would have revealed nothing about the platform's condition at the time of the collapse." (Doc. 66 at 23.) But it is not clear what "entirely rebuilt" means. The declarations attached to Paws Up's response brief, which state the platform had been rebuilt, do not describe the repairs with any detail. (*See* Docs. 66-1 at 2; 66-5 at 3.) Moreover, Paws Up has also indicated the platform was destroyed to "abate the safety hazard posed by the decaying structure," which implies the platform was perhaps not entirely rebuilt with new materials. (Doc. 65-2 at 5.) Because the platform was destroyed, the condition of the platform is now unknown and cannot be fully ascertained. In those circumstances, a party "can hardly assert any presumption of irrelevance as to the destroyed [evidence]." *Sanders*, 634 F.Supp.3d at 942. Instead, the "spoliation of evidence 'raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.'" *Id.* (citing *Apple Inc.*, 888 F.Supp.2d at 998).

The Court therefore finds Paws Up spoliated evidence when it removed the platform.

**d. Remedy**

The question now turns to the appropriate sanction for Paws Up's spoliation. Plaintiffs ask the Court to impose a dispositive sanction.

To determine whether to impose a dispositive sanction, a court must assess the following factors: "(1) the presence of extraordinary circumstances; (2) willfulness, bad faith, or fault of the offending party; (3) the relationship between the misconduct and the matters in controversy; (4) the risk of prejudice to the party seeking sanctions; (5) the public policy favoring disposition of cases on their merits; and (6) the efficacy and availability of lesser sanctions." *Giacometto*, 2024 WL 218625 at *3 (citing *Halaco*, 843 F.2d at 380).

1. Extraordinary Circumstances

"In the Ninth Circuit, 'extraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case.'" *In re Napster Inc.*, 462 F.Supp.2d at 1071 (citing *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, *3 (N.D. Cal. Aug. 17, 2004). But a party's failure to preserve evidence that it knew or reasonably should have known would be relevant to a potential action, "does not necessarily warrant default or dismissal if these actions 'do not eclipse entirely the possibility of a just result.'" *Id.*

Here, the Court does not find extraordinary circumstances. There has been no showing of a pattern of disregard for Court orders or deceptive litigation tactics. Additionally, although Paws Up spoliated evidence that it should have known was relevant to this action, its actions certainly do not entirely eclipse the possibility of a just result. Plaintiffs are not left without any evidence of the condition of the platform. The collapsed platform was documented with contemporaneous photographs. Discovery remains open, and individuals with knowledge of the condition of the platform may be deposed. Paws Up has also represented that remnants of the platform remain available for inspection at the site, such as some footings, lumber from the platform, and lag bolts that connected the floor of the platform to a tree.

Moreover, had Plaintiffs been more diligent in requesting a site visit, the current situation would have been avoided. Plaintiffs allowed 18 months and the entire original discovery period to expire, without requesting a site inspection.

Accordingly, the Court finds an alternative sanction "could be equally effective and yet less drastic" to address Paws Up's spoliation. *Advantacare*, 2004 WL 1837997 at *5.

2. Willfulness, Bad Faith, or Fault of Paws Up

"[A] default sanction requires 'willfulness, fault, or bad faith.'" *In re Napster Inc.*, 462 F.Supp.2d at 1074. "A party's destruction of evidence qualifies

as willful spoliation if the party has some notice that the evidence was potentially relevant to the litigation before it was destroyed." *Giacometto*, 2024 WL 218625 at *4 (citing *Sanders*, 634 F.Supp.3d at 944).

Paws Up contends the platform was destroyed because of a miscommunication between its outside legal counsel and Paws Up's director of facilities, and was not the result of a bad faith effort. But even if Paws Up did not act in bad faith, it was nevertheless negligent in destroying the platform. As discussed above, Paws Up was on notice that the platform was potentially relevant to this litigation, yet destroyed the platform while a motion to reopen discovery was pending. Paws Up is, therefore, at fault for failing to preserve the platform.

3. <u>Nexus Between Misconduct and Matters in Controversy</u>

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Halaco*, 843 F.2d at 381. Here, the destruction of the platform plainly relates to the matters in controversy, as the condition of the platform may be relevant to Plaintiffs' compensatory and punitive damages claims. Nevertheless, as previously discussed, Paws Up's spoliation does not eclipse the possibility of a just result. Thus, Paws Up's misconduct does not support default judgment.

/ / /

4. Risk of Prejudice to the Party Seeking Sanctions

"Prejudice is an 'optional' consideration when determining whether default sanctions are appropriate." *In re Napster*, 462 F.Supp.2d at 1075. The prejudice inquiry considers whether the spoliating party's actions impaired the moving party's "ability to go to trial or threatened to interfere with the rightful outcome of the case." *Giacometto*, 2024 WL 218625 at *4 (citing *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). The spoliation of the platform is prejudicial to Plaintiffs because they will need to use evidence other than the platform itself to prove their claims. But as discussed, other evidence does exist. Moreover, Plaintiffs bear some responsibility for the delay in seeking discovery of the platforms. As such, the Court finds that with lesser remedies in place, the prejudice to Plaintiffs can be ameliorated short of entering default against Paws Up.

5. Public Policy Favoring Disposition on the Merits

"The public policy favoring resolution of cases on their merits weighs against a default ruling." *Giacometto*, 2024 WL 218625 at *5. The Court finds no alternative overriding concern to justify not allowing this case to be decided on its merits. In fact, ensuring a decision on the merits has guided the course of the proceedings in this case. Plaintiffs were thrown a lifeline after the initial discovery period expired with the Plaintiffs having done virtually nothing to prosecute their

claim. Through the parties' agreement, a new schedule was put in place to allow Plaintiffs the opportunity to conduct discovery and prepare their case. The case was then rescheduled a third time to allow Plaintiff Alfredo Sararo to obtain surgery and provide time for his medical condition to stabilize. These measures were taken to allow for a disposition of Plaintiffs' claims on the merits, and the case should be allowed to proceed accordingly.

6. Efficacy and Availability of Lesser Sanctions

Finally, before entering a dispositive sanction, "the court must first consider the feasibility of less drastic sanctions." *Giacometto*, 2024 WL 218625 at *5 (citing *Halaco*, 843 F.2d at 281). Here, although negligence has occurred, the Court finds a fair resolution on the merits remains possible, and therefore, default judgment is not warranted.

It should also be noted that neither party has shined in this process, and neither party comes to this spoliation dispute with entirely clean hands. Plaintiffs substantially delayed conducting discovery in this case, and failed to timely request a site visit to view the platform. Whereas Paws Up wrongfully destroyed the platform while Plaintiff's motion to reopen discovery was pending.

Given all the facts and circumstances, the Court finds the best remedy will be to issue a permissive adverse inference instruction to the jury. The Court will defer determination of the specific wording of the instruction until the time of trial.

**e. Monetary Sanctions**

"Monetary sanctions may be imposed where one party has wrongly destroyed evidence." *In re Napster*, 462 F.Supp.2d at 1078. *See also Giacometto*, 2024 WL 218625, at *6 (imposing monetary sanctions on the plaintiff's successful claim for spoliation sanctions). But the Court declines to do so here. As noted above, both parties bear some responsibility for the current dispute.

Additionally, it does not appear that the parties engaged in earnest meet and confer efforts to resolve this dispute. L.R. 26.3(c)(1) requires that parties meet and confer through "direct dialogue and discussion in a face-to-face meeting (whether in person or by electronic means), in a telephone conversation, or in detailed, comprehensive correspondence," and then certify in their discovery motion that they have done so. Here, Plaintiffs state in their motion that "[t]he parties have discussed this issue more than once, and Paws up opposes Plaintiff's Motion for Sanctions." (Doc. 64 at 2.) Plaintiffs also state in their reply brief that on January 8, 2026, counsel spoke "about multiple topics, including this motion. [Defendant's counsel told Plaintiff's counsel] words to the effect of: 'go ahead and file the motion and tell the Court Paws Up objects to it.'" (Doc. 67 at 4.) Plaintiff's counsel submits that "[t]his conversation satisfied any and all meet and confer obligations." (*Id.*) It does not. A proclamation by one party that it is going to file a motion, and by the opposing party that they object, is not meeting and conferring.

It is simply throwing down the gauntlet. Meeting and conferring requires discussion and dialogue, and negotiations conducted in good faith to resolve the dispute. Given the nature of the current dispute, a resolution may not have been possible. But the parties are required to make a good faith effort to resolve discovery disputes through the meet and confer process, and there is no indication that occurred here. The Court, therefore, declines to award attorney fees.

## III. CONCLUSION

In sum, the Court finds Paws Up improperly spoliated evidence in this case, and the appropriate remedy is an adverse inference instruction. Plaintiffs request for attorney fees is denied.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Sanctions (Doc. 64) is **GRANTED in part and DENIED in part**, as set forth above.

DATED this 19th day of August, 2026.

TIMOTHY J. CAVAN
United States Magistrate Judge